## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC. | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIV. ACTION NO. 3:17-cv-00053-K |
| REGION ONE EDUCATION SERVICE | § | |
| CENTER, NORA GALVAN, BRENDA | § | |
| HUSTON, J. ANN VEGA, Dr. LAURA | § | |
| SHENEMAN, SYLVIA IBARRA, | § | |
| SCHOLASTIC BOOK FAIRS, INC., | § | |
| SCHOLASTIC CORPORATION, and | § | |
| HOUGHTON MIFFLIN HARCOURT | § | |
| PUBLISHING CO., | § | |
|     *Defendants.* | § | |

---

### BRIEF IN SUPPORT OF
### THE REGION ONE/MCALLEN DEFENDANTS' OPPOSED
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### OR IN THE ALTERNATIVE, TRANSFER VENUE

---

**RICHARDS RODRIGUEZ & SKEITH**

816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone: 512-476-0005
Facsimile:  512-476-1513

J. ROGER WILLIAMS, JR.
Attorney-in-charge
State Bar No. 2155560
Email: RWilliams@rrsfirm.com
DANIEL RIEGEL
State Bar No. 24088298
Email: DRiegel@rrsfirm.com

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ALLEGED FACTS................................................................. 3

III.  LEGAL STANDARD........................................................................................... 6

IV.   ARGUMENT ........................................................................................................ 7

  A.    The Court Should Dismiss Plaintiff's Claims Due To Improper Venue, or In the Alternative, Transfer Plaintiff's Claims to the Southern District of Texas. . 7

     1.  Venue is improper in the Northern District of Texas........................... 7

     2.  This Case Should Be Transferred To the Southern District of Texas Under 28 U.S.C. § 1406 or, Alternatively, Under 28 U.S.C. § 1404(a) "For The Convenience of the Parties and the Witnesses."................................. 9

  B.    All of Plaintiff's Claims are Barred on Immunity Grounds and Must be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1). ...................... 12

     1.  Plaintiff's State-Law Claims are Barred by Government Immunity.. 12

     3.  All of Plaintiff's Claims Against Region One and Dr. Sheneman are Barred on Eleventh Amendment Sovereign Immunity Grounds.............. 15

     4.  Plaintiff's Federal-Law Claims Against Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra are Barred on Qualified Immunity Grounds... 16

     5.  Region One, Ms. Vega, Ms. Huston, and Dr. Sheneman Intend to file Motions For Summary Judgment On Their Sovereign Immunity and Qualified Immunity Defenses in the SDTex Cases Against Region One By March 7, 2017. ........................................................................................ 18

  C.    The RICO Claims Fail To State A Claim Upon Which Relief May Be Granted Under Rules 9(b) and 12(b)(6)................................................................. 18

     1.  The Complaint Fails To Allege A Sufficient Factual Basis for the RICO Claims Predicated on Mail Fraud or Wire Fraud. ......................... 19

     2.  The Complaint Alleges Neither The Elements Of, Nor a Sufficient Factual Basis For, the Predicate Act of Trafficking In Goods or Services Bearing Counterfeit Marks under 18 U.S.C. § 2320............................... 20

     3.  The Complaint Fails To Allege a "Pattern" of Racketeering Activity. 22

     4.  The Complaint Fails To Allege Facts To Show an "Enterprise." ...... 22

     5.  The Complaint Fails To State a Claim For Conspiracy Under § 1962(d).................................................................................................. 23

     6.  Region One, a Governmental Entity, Cannot Be Held Liable Under RICO. ...................................................................................................... 23

D.      The Complaint Fails To State Claims Under the Lanham Act. ................ 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*,
  878 F. Supp. 2d 779 (S.D. Tex. 2012) ...................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7, 8

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*,
  2:10-CV-09378-CBM, 2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ................... 20

*Backe v. LeBlanc*,
  691 F.3d 645 (5th Cir. 2012) .................................................................................. 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 8

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) .................................................................................................. 30

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
  240 Fed. Appx. 612 (5th Cir. 2007) ......................................................................... 6

*Brodzki v. Chicago Police Dept.*,
  3:09-CV-2179-K, 2009 WL 4823051 (N.D. Tex. Dec. 11, 2009) ............................ 10

*Brown v. Nationsbank Corp.*,
  188 F.3d at 588 (5th Cir. 1999) .............................................................................. 20

*Campinha-Bacote v. Bleidt*,
  CIV.A. H-10-3481, 2011 WL 4625394 (S.D. Tex. Oct. 3, 2011) ............................ 20

Chaney v. Dreyfus Serv. Corp.,
  595 F.3d 219 (5th Cir. 2010) .................................................................................. 28

*Chavez v. Arte Publico Press*,
  59 F.3d 539 (5th Cir. 1995) .................................................................................... 20

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) ................................................................................................ 19

Crowe v. Henry,
  43 F.3d 198 (5th Cir. 1995) .................................................................................... 28

*Dammon v. Folse*,
  846 F.Supp. 36 (E.D.La. 1994) ............................................................................... 29

*Dubin v. United States*,
  380 F.2d 813 (5th Cir. 1967) .................................................................................... 6

*Educ. Serv. Ctr., Region II v. Marikudi*,
  13-09-00371-CV, 2010 WL 1254603 (Tex. App.—Corpus Christi Apr. 1, 2010, no pet.) ..... 14

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
  527 U.S. 627 (1999) ............................................................................................. 19

*Gaines v. Texas Tech Univ.*,
  965 F. Supp. 886 (N.D. Tex. 1997) ..................................................................... 19

*Gentilello v. Rege*,
  627 F.3d 540 (5th Cir. 2010) ................................................................................. 8

*Genty v. Resolution Trust Corp.*,
  937 F.2d 899 (3rd Cir. 1991) .............................................................................. 28

*Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*,
  283 S.W.3d 838 (Tex. 2009) ............................................................................... 16

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*,
  53 S.W.3d 799 (Tex. App.—Austin 2001, pet. denied) ...................................... 14

*In re Burzynski*,
  989 F.2d 733 (5th Cir. 1993) .............................................................................. 22

*In re Great Lakes Dredge & Dock Co. LLC*,
  624 F.3d 201 (5th Cir. 2010) ................................................................................. 8

*In re Insurance Brokerage Antitrust Litigation*,
  618 F.3d 300 (3rd Cir. 2010). ............................................................................. 27

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc), cert. denied, 555 U.S. 1172 (2009) .......... 11

*Inst. for Creation Research Graduate Sch. v. Paredes*,
  No. 3:09–CV–0693–B, 2009 WL 43333366, (N.D. Tex. Dec. 1, 2009) .................. 6

*Jacquez v. Procunier*,
  801 F.2d 789 (5th Cir. 1986) .............................................................................. 20

*Lancaster Comm'y Hospital v. Antelope Valley Hospital District*,
  940 F.2d 397 (9th Cir. 1991) .............................................................................. 28

*Matter of Super Van Inc.*,
  92 F.3d 366 (5th Cir. 1996) ................................................................................ 10

*McCardell v. U.S. Dept. of Hous. & Urban Dev.*,
  794 F.3d 510 (5th Cir. 2015) .............................................................................. 17

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
  253 S.W.3d 653 (Tex. 2008) ............................................................................... 15

*Molina v. Alvarado*,
  463 S.W.3d 867 (Tex. 2015) ............................................................................... 16

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) .............................................................................. 21

*Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*,
  913 F. Supp. 2d 305 (S.D. Tex. 2012) .................................................................. 7

iv

*Neder v. U.S.*,
  527 U.S. 1 (1999) ............................................................................................ 23

*Old Time Enterprises, Inc. v. International Coffee Corp.*,
  862 F.2d 1213 (5th Cir. 1989) ....................................................................... 26

*Perez v. Region 20 Education Service Center*,
  307 F.3d 318 (5th Cir. 2002) ......................................................................... 18

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ........................................................................... 8

*Proctor & Gamble Co. v. Amway Corp.*,
  242 F.3d 539 (5th Cir. 2001) ......................................................................... 30

*Radiance Foundation v. N.A.A.C.P.*,
  786 F.3d 316 (4th Cir. 2015) ......................................................................... 30

*Rao v. BP Products North America, Inc.*,
  589 F.3d 389 (7th Cir. 2009) ......................................................................... 27

*Richardson v. S. Univ.*,
  118 F.3d 450 (5th Cir. 1997) ......................................................................... 18

*Rodriguez v. Christus Spohn Health Sys. Corp.*,
  628 F.3d 731 (5th Cir. 2010) ........................................................................... 7

*Smith's Consumer Products, Inc. v. Fortune Products, Inc.*,
  3:14-CV-00627-K, 2015 WL 1037419 (N.D. Tex. Mar. 9, 2015) ................. 11

*State Contracting & Eng'g Corp. v. State of Florida*,
  258 F.3d 1329 (Fed. Cir. 2001) ..................................................................... 18

*Stokes v. Gann*,
  498 F.3d 483 (5th Cir. 2007) ......................................................................... 20

*Taylor Pub. Co. v. Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ......................................................................... 14

*Trugreen Landcare, L.L.C. v. Scott*,
  512 F. Supp. 2d 613 (N.D. Tex. 2007) .......................................................... 20

*U.S. ex rel. Russell v. Epic Healthcare Mgmt. Group*,
  193 F.3d 304 (5th Cir. 1999) ......................................................................... 23

*U.S. v Turkette*,
  452 U.S. 576 (1981) ....................................................................................... 26

*U.S. v. Boyle*,
  556 U.S. 938 (2009) ....................................................................................... 27

*U.S. v. Hanafy*,
  302 F.3d 485 (5th Cir. 2002) ......................................................................... 25

*Union Pac. R. Co. v. Louisiana Pub. Serv. Com'n*,
  662 F.3d 336 (5th Cir. 2011) ........................................................................... 7

*United States v. Lopez,*
   514 U.S. 549 (1995) ........................................................................................ 30

*Univ. of Houston, Texas v. Chavez,*
   517 U.S. 1184 (1996) ...................................................................................... 20

*Utah Republican Party v. Herbert,*
   141 F. Supp. 3d 1195 (D. Utah 2015) ............................................................ 18

*Victaulic Co. v. Romar Supply, Inc.,*
   3:13-CV-02760-K, 2013 WL 6027745 (N.D. Tex. Nov. 14, 2013) ............... 13

*Williams v. WMX Technologies, Inc.,*
   112 F.3d 175 (5th Cir. 1997) .......................................................................... 23

**<u>Statutes</u>**

15 U.S.C. § 1114 ............................................................................... 12, 24, 25

15 U.S.C. § 1122 (Trademark Remedy Clarification Act) ........................... 16

15 U.S.C. § 1125 ............................................................................... 12, 24, 25

15 U.S.C. § 1127 ....................................................................................... 25

18 U.S.C. § 1341 ....................................................................................... 19

18 U.S.C. § 1343 ....................................................................................... 19

18 U.S.C. § 1961 .................................................................................. passim

18 U.S.C. § 1962 ......................................................................... 12, 18, 20, 23

18 U.S.C. § 1964 ....................................................................................... 23

18 U.S.C. § 2320 .................................................................................. 20, 21

28 U.S.C. § 1391 ..................................................................................... 8, 10

28 U.S.C. § 1404 .................................................................................. passim

28 U.S.C. § 1406 ..................................................................................... 6, 9

TEX. BUS. & COM. CODE §16.103 ............................................................. 14

TEX. CIV. PRAC. & REM. CODE § 101.021 (Texas Tort Claims Act) ........... 12

TEX. CIV. PRAC. & REM. CODE § 101.022 (Texas Tort Claims Act) ........... 12

TEX. CIV. PRAC. & REM. CODE § 101.106 ............................................. 13, 14

TEX. EDUC. CODE § 22.0511 ..................................................................... 14

TEX. EDUC. CODE § 8.006 ........................................................................ 14

**BRIEF IN SUPPORT OF
THE REGION ONE/MCALLEN DEFENDANTS' OPPOSED
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE, TRANSFER VENUE**

Defendants Region One Education Service Center ("Region One"), Brenda Huston ("Ms. Huston"), J. Ann Vega ("Ms. Vega"), Dr. Laura Sheneman ("Dr. Sheneman"), and Dr. Silvia Ibarra ("Dr. Ibarra") (collectively, "The Region One/McAllen Defendants") file this Brief in Support of their Opposed Motion to Dismiss Plaintiff's Complaint, or in the alternative, Transfer Venue to the Southern District of Texas, McAllen Division.

## I. INTRODUCTION

This case is one of fourteen federal lawsuits filed by Plaintiff, Springboards to Education, Inc. ("Plaintiff" or "Springboards") in the Southern and Northern Districts of Texas[1] alleging claims for trademark infringement, counterfeiting, dilution, and unfair competition under Texas state law and the federal Lanham Act arising out of alleged use of Plaintiff's registered trademarks in "Read a Million Words," "Millionaire Reader" and similar marks. Complaint, ¶¶ 1-90.[2] What is unusual about this case is that when Plaintiff filed the instant Complaint on January 6, 2017, Plaintiff was already pursuing identical claims against Defendants Region One, Ms. Galvan, Ms. Huston, Ms. Vega, and Dr. Sheneman in two cases pending before Judge Ricardo H. Hinojosa in the United States District Court for the Southern District of Texas, McAllen Division ("the SDTex Cases"): *Springboards to Education, Inc. v. Region One Education Service Center, Brenda Huston, J. Ann Vega, Laura Sheneman, Nora Galvan*, Case 7:16-cv-544 (the "Region One SDTex case"); and *Springboards to Education, Inc. v. McAllen*

---

[1] *See* App. 306 (Ex. 9 – Case List).

[2] A copy of the Complaint filed in the instant case is included in the attached Appendix ("App.").  *See* App. 001-071 (Ex. 1 – Springboards' Complaint in this Action).

*ISD, Brenda Huston, and J. Ann Vega*, Case 7:16-cv-523.[3]

The instant Complaint re-asserts the same counterfeiting, infringement, dilution, and unfair competition claims asserted in the SDTex Cases. The instant Complaint also adds four new Defendants—Dr. Ibarra, Scholastic Book Fairs, Inc., Scholastic Corporation, and Houghton Mifflin Harcourt Publishing Co.—and adds two claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. Except for the allegations relating to the RICO claims and the new defendants, the core allegations remain the same (if not identical) as those alleged in the SDTex Cases.

The case against the Region One/McAllen Defendants should be dismissed on multiple grounds. Region One and Dr. Sheneman have sovereign immunity against all claims; the Region One/McAllen Defendants have governmental immunity against the state law claims; the individual defendants have qualified immunity against the Lanham Act and RICO claims; and the Complaint fails to state Lanham Act and RICO claims on which relief may be granted. The instant motion requests dismissal on these grounds under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

However, it is not this Court that should decide these issues, but Judge Hinojosa in the Southern District of Texas. Venue is plainly improper in the this district, but it is proper in the Southern District of Texas. All events alleged in the Complaint took place in South Texas, Plaintiff's office is in Edinburg, Region One's office is in Edinburg and it serves counties in South Texas, and the individual defendants reside and work in South Texas. More importantly, Judge Hinojosa is already handling a case with the exact same defendants and claims. Judge Hinojosa has already considered and, on January 6, 2017, granted, the defendants' motion to

---

[3] Copies of Springboards' complaints filed in the SDTex Cases are included in the attached Appendix.  *See* App. 072-115 (Region One) and App. 116-159 (McAllen ISD) (Ex. 2 – Springboards' Complaints in SDTex Cases).

dismiss the identical state law claims on governmental immunity grounds.[4] Judge Hinojosa has already considered the same sovereign immunity, qualified immunity, and failure-to-state-a-claim defenses against the same Lanham Act claims and invited the defendants in McAllen to move for summary judgment on those grounds.[5] To enforce the Court's first-to-file rule and the rule against claim-splitting, and in the interest of justice and for the convenience of the parties and witnesses, the Region One/McAllen Defendants request that the Court transfer this case to the Southern District of Texas, McAllen Division so that Judge Hinojosa can consider the motion to dismiss under Rules 12(b)(1) and 12(b)(6).

## II. STATEMENT OF ALLEGED FACTS

According to the allegations in the Complaint, ECF No. [1] ("Complaint"), Springboards designs, markets, and sells reading-related products under the Springboards brand, and Springboards is the owner of certain registered trademarks, including the terms "Millionaire Reader," "Million Dollar Reader," "Millionaire's Reading Club," and "Read A Million Words." Complaint, ¶¶ 22-23. Springboards alleges that it began marketing and selling products and services bearing the Springboard trademarks as early as 2005 and that each year, Springboards "sells hundreds of thousands of dollars of goods and services bearing the Springboard brand and Trademarks." *Id.* ¶¶ 26-28.

Springboards further alleges that between 2006 and 2016, Defendants Galvan, Huston, Vega, Sheneman, Ibarra, Pharr-San Juan-Alamo Independent School District, McAllen Independent School District,[6] Region One Education Service Center, Scholastic Book Fairs, Inc.

---

[4] *See* App. 160-166 (Ex. 3 –Minute Entries dated Jan. 6, 2017 in the SDTex Cases).

[5] *See* App. 160-166 (Ex. 3 –Minute Entries dated Jan. 6, 2017 in the SDTex Cases).

[6] Although Springboards has alleged that McAllen ISD and Pharr-San Juan-Alamo ISDs participated in the alleged scheme, these school districts are not named as defendants in this litigation.

("SBF"), Scholastic Corporation ("Scholastic"), and Houghton Mifflin Harcourt Publishing Co.

("Houghton Mifflin") conspired, in violation of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961 *et seq*., to "intentionally defraud Plaintiff out of sales and

profits through Defendants' distribution, production, and sales of its inferior knock-off(s)." *Id.* ¶

31. Springboards' allegations include, *inter alia*:

- that in 2013, SBF and Scholastic met with Dr. Ibarra, then McAllen ISD's Assistant Superintendent of Curriculum and Instruction, and discussed "how Scholastic and SBF could and would utilize Plaintiff's protected property and how the assistant superintendent could and would assist Scholastic and SBF in promoting their infringing version(s) of Plaintiff's product/property." *Id.* ¶ 32.

- that from 2013 to the present, Scholastic and SBF "have been (sic) encouraged, aided, and abetted schools, school districts, and other intermediaries to infringe on Plaintiff's property by among other things, assisting and guiding in the creating of counterfeit or knock-off products." *Id.*

- that in "intentional furtherance of this scheme, the individual Defendants and ESC used the Internet to disseminate Defendants' inferior knock-offs to end-users and consumers across South Texas" and "used the U.S. Mail and/or other interstate carriers to ship counterfeit materials to purchasing end-users or consumers throughout South Texas." *Id.* ¶¶ 40-41.

- that Defendants have "engaged in trafficking of goods and services bearing counterfeit marks[.]" *Id.* ¶ 60.

- that Defendants "shared a common goal—to induce consumers to purchase their infringing versions of Plaintiff's property/product instead of Plaintiffs[.]" *Id.* ¶ 61.

- that Defendants executed an "overarching plan" to infringe on Plaintiffs' trademarks "on a student-by-student basis, thousands of times since 2006; on an annual basis, each school since 2006; on a school-by-school basis, multiple times since 2006[.]" *Id.* ¶ 63.

Springboards further alleges that Defendants have violated state and federal trademark

laws by the unauthorized "manufacturing, advertising, promoting, distributing, offering for sale,

and/or selling [of Counterfeit Products] throughout at least Texas and most likely the United

States." *Id.* ¶ 65. Springboards claims that Dr. Sheneman "previously purchased Springboard

products from the company," *id.* ¶ 67; that "[t]he breadth of Defendants' counterfeiting is

extensive;" *id.* ¶ 66; and that "Defendants have sold at least thousands of pieces of Counterfeit

Products." *Id.* ¶ 66.

Although the Complaint states that Exhibit B includes "[r]epresentative examples of Defendants' activities," *id.* ¶ 66, Exhibit B does not provide examples of *any* sales or any connection between Defendants and Springboards. Instead, Exhibit B appears to include:

- minutes of a "Literacy Action Team Meeting" held on September 11, 2014, which was attended by Region One staff, including Dr. Sheneman, and school district representatives, including Ms. Galvan and Ms. Huston;

- a screenshot indicating that a school librarian from Weslaco ISD gave a presentation at a Region One library seminar in February 2015 stating that the school was providing a "Million Word Challenge" to promote student reading; and

- screenshots of an apparent "goal setting" worksheet titled "Region One ISD – READS 2015-2016," which includes a reference to "Millionaire trophies" and a field trip for students who meet the "Millionaire Reader criteria."

*See* Exh. B to Pl.'s Complaint, ECF No. [1-2]. In addition, the Complaint contains an allegation that some schools and school districts served by Region One promoted student reading through a "Millionaire Reading" campaign. *See* Complaint, ¶¶ 86-90. The Complaint also alleges that Defendants removed from Region One's website certain hyperlinks to meeting minutes that allegedly show the existence of the "Millionaire Reading" campaign. *Id.* [7]

Springboards seeks treble damages, punitive damages, compensatory damages, an accounting and award of all profits derived from Defendants' alleged actions, and an injunction against Defendants from taking such actions in the future. *Id.* Prayer for Relief ¶¶ 161-176.

---

[7] The allegations described in this paragraph are identical to those allegations asserted by Springboards in its complaint filed in the SDTex Case against Region One, et al. *See* App. 77-93, 106-116 (Ex. 2 – Springboards' Complaints in SDTex Cases, at ¶¶ 9-11, 24-84, and Exhibits B-C ).

### III. <u>LEGAL STANDARD</u>

<u>Fed. R. Civ. P. 12(b)(3) – Venue</u>. "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). However, once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper. *See Inst. for Creation Research Graduate Sch. v. Paredes*, No. 3:09–CV–0693–B, 2009 WL 43333366, at *2 (N.D. Tex. Dec. 1, 2009) (citing cases).

If venue is lacking, section 1406 instructs district courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision to dismiss or transfer lies within the court's discretion. *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967)). Even if the court finds that venue is proper, the court may transfer the action "in the interest of justice" to "any other district or division where it might have been brought[.]" 28 U.S.C. § 1404.

<u>Fed. R. Civ. P. 12(b)(1) – Immunity</u>. State sovereign immunity under the Eleventh Amendment "operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. Louisiana Pub. Serv. Com'n*, 662 F.3d 336, 340 (5th Cir. 2011). Likewise, "[g]overnmental immunity from suit defeats a court's subject matter jurisdiction." *Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*, 913 F. Supp. 2d 305, 309 (S.D. Tex. 2012). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Id.* Where the plaintiff has not met its burden, the governmental unit is entitled to dismissal pursuant to Rule

12(b)(1) of the claims on which it has governmental immunity from suit. *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734-38 (5th Cir. 2010) (holding that district court erred in not granting plaintiff's 12(b)(1) motion to dismiss state claims on which defendant had government immunity from suit under the Texas Tort Claims Act).

Fed. R. Civ. P. 12(b)(6) – Failure to State A Claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint states a valid claim for relief, a court accepts "all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). However, a court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. <u>ARGUMENT</u>

A. **The Court Should Dismiss Plaintiff's Claims Due To Improper Venue, or In the Alternative, Transfer Plaintiff's Claims to the Southern District of Texas.**

Venue is plainly improper in this district. Subject to and without waiving their immunity defenses, *see* Section B below, the Region One/McAllen Defendants request that this case be dismissed or transferred to the Southern District of Texas.

1. <u>Venue is improper in the Northern District of Texas.</u>

Plaintiff alleges that "[v]enue is proper under 1391 because a substantial part of the

events or omissions giving rise to the claim occurred" in the Northern District of Texas. Complaint, ¶ 21.[8] Plainly read, however, the Complaint shows that the alleged "events or omissions giving rise" to Plaintiff's claims occurred in the *Southern* District of Texas:

- Paragraph 31(d): "Where: **South Texas**, the Region One Education Service Center area, Cameron County, Hidalgo County (Pharr-San Juan-Alamo Independent School District, McAllen Independent School District), Jim Hogg County, Starr County, Webb County, Willacy County, and Zapata County."[9]

- Paragraph 40: "[T]he Individual Defendants and ESC used the Internet to disseminate Defendants' inferior knock-offs to end-users and consumers across **South Texas** . . ."

- Paragraph 41: "[T]he Individual Defendants and ESC also used the U.S. Mail and/or other interstate carriers to ship counterfeit materials to purchasing end-users or consumers throughout **South Texas**."

Complaint, ¶¶ 31, 40, 41 (emphasis added). The Complaint alleges that the individual defendants—Huston, Galvan, Vega, Sheneman, and Ibarra—reside and work in South Texas, and that "the various aspects of the ESC are presented to the public as one single entity or enterprise accessed through a single facility" in Edinburg, Texas. Complaint, ¶¶ 9-14, 56. Plaintiff's Complaint fails to show that *any* alleged "event or omission giving rise" to Plaintiff's claims occurred in the Northern District of Texas. In fact, none of the Region One/McAllen Defendants maintain a residence or place of employment in the Northern District of Texas.[10] None of the individual Defendants have had conversations or meetings in the Northern District of Texas with any other Defendant named in this action. *See id.* Accordingly, venue in this district is improper as to the Region One/McAllen Defendants.

The court would be within its power to dismiss the case for improper venue. *See Brodzki*

---

[8] 28 U.S.C. § 1391(b)(2) provides that a "civil action may be brought in … (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

[9] The Region One/McAllen Defendants request that the Court take judicial notice of the fact that each county identified in Paragraphs 31(d) and 55 is located within the Southern District of Texas. 28 U.S.C. § 124(b).

[10] *See* App. at 265-277 (Ex. 7 – Region One/McAllen Declarations).

*v. Chicago Police Dept.*, 3:09-CV-2179-K, 2009 WL 4823051, at *1 (N.D. Tex. Dec. 11, 2009) (J. Kinkeade) (dismissing case for improper venue where plaintiff previously filed similar cases and was "well aware of the venue provisions and filing requirements"). Dismissal is also appropriate because Springboards' claims against the Region One/McAllen Defendants violate the rule against "claim splitting," which prohibits a plaintiff from concurrently bringing claims regarding the same alleged acts across multiple lawsuits. *See Matter of Super Van Inc.*, 92 F.3d 366, 370-71 (5th Cir. 1996) (A "main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim.").

Regardless, for the reasons discussed in the next section, the Region One/McAllen Defendants move the Court to transfer this case to the Southern District of Texas, McAllen Division, in the interest of justice and for the convenience of the parties and witnesses.

2. <u>This Case Should Be Transferred To the Southern District of Texas Under 28 U.S.C. § 1406 or, Alternatively, Under 28 U.S.C. § 1404(a) "For The Convenience of the Parties and the Witnesses."</u>

Where a plaintiff has filed an action in an improper venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Alternatively, even if the Court finds that venue is proper in this District, the Court can transfer this action "[f]or the convenience of the parties and witnesses, in the interest of justice, … to any other district where it might have been brought." 28 U.S.C. §1404(a). Transferring this case to the Southern District of Texas would serve the interest of justice and be more convenient for the parties and witnesses.

As a preliminary matter, the Southern District of Texas is a district where this case may or might have been brought under 28 U.S.C. §§ 1406, 1404(a). As discussed in Section A.1, *supra*, the Complaint shows that a "substantial part" of the alleged events or omissions giving

rise to the claim occurred" in the Southern District, thus placing venue in that district under 28 U.S.C. § 1391(b)(2). The allegations that defendants SBF and Houghton Mifflin each "sells and distributes its publications in the Northern District of Texas and throughout the United States," Complaint, ¶¶ 6, 8, equally support venue in the Southern District of Texas.[11]

Furthermore, all relevant Section 1404(a) factors support transfer of this case to the Southern District. *See Smith's Consumer Products, Inc. v. Fortune Products, Inc.*, 3:14-CV-00627-K, 2015 WL 1037419, at *1 (N.D. Tex. Mar. 9, 2015) (J. Kinkeade) (discussing relevant public-interest and private-interest factors in venue transfer analysis under 28 U.S.C. § 1404).[12]

As discussed above, defendants Huston, Vega, Sheneman, and Ibarra all reside and work in the Southern District of Texas, both Plaintiff and Defendant Region One have their principal places of business in the Southern District of Texas, and it would be costly, inefficient, and time-consuming for defendants Huston, Vega, Sheneman, and Ibarra, and employees of Region One, to have to travel 500+ miles to the Northern District of Texas to attend court proceedings as parties or witnesses.[13] Plaintiff repeatedly alleges that evidence relevant to his claims is within the possession of Region One and the individual defendants,[14] *i.e.*, within the Southern District of Texas. To the extent the Complaint identifies potential non-party witnesses, all such witnesses appear to reside or work in South Texas, well outside the 100-mile limit for subpoenas under

---

[11] The Region One/McAllen Defendants take no position in this motion on whether Scholastic, SBF, or Houghton Mifflin are subject to personal jurisdiction in, or reside in, any district in Texas.

[12] The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc), cert. denied, 555 U.S. 1172 (2009).

[13] *See* App. at 265-277 (Ex. 7 – Region One/McAllen Declarations).

[14] *See* Complaint, ¶¶ 31, 40-41, 46-50, 148-149.

Fed. R. Civ. P. 45(a)(1)(A).[15]

Moreover, Judge Hinojosa is already handling the SDTex Cases (plus the other four Springboards cases in McAllen), has already considered and addressed the immunity defenses to Plaintiff's State Law claims, has invited motions for summary judgment on immunity defenses and merits issues, and is already familiar with the facts relating to the claims against the Region One/McAllen Defendants. Adjudication of this lawsuit in the Southern District of Texas would reduce and/or eliminate the judicial inefficiencies that would result from conducting parallel litigations in two different districts. Transfer would allow Judge Hinojosa to determine the most appropriate response for Plaintiff's election to file this lawsuit in Dallas instead of amending the Complaint in McAllen. Finally, these lawsuits attempt to regulate reading incentive programs and other educational processes of schools and school districts in the Southern District of Texas, and the RICO allegations assault the reputation of local public school educators who live, work, and serve the public in the Southern District of Texas. These matters of uniquely local concern should be heard by the court in Southern District of Texas.

Transfer is also warranted under the "first-to-file" rule, which prohibits duplicative ongoing litigation in the federal courts. *See Victaulic Co. v. Romar Supply, Inc.*, 3:13-CV-02760-K, 2013 WL 6027745, at *3 (N.D. Tex. Nov. 14, 2013) (transferring case pursuant to "first-to-file rule" because "the issues raised by the two cases substantially overlap").

In short, all relevant factors weigh in favor of adjudication in the Southern District of Texas. Accordingly, the Court should transfer the case to the Southern District of Texas in the interest of justice and for the convenience of the parties pursuant to 28 U.S.C. §§ 1406, 1404(a).

---

[15] *See* Complaint, ¶¶ 31(a) (unnamed employees of McAllen ISD and Pharr-San Juan-Alamo ISD), 57 (unnamed "persons with various employer or contractor relationships" with Region One).

B. **All of Plaintiff's Claims are Barred on Immunity Grounds and Must be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1).**

Plaintiff asserts three state-law claims—trademark dilution under the Texas Anti-Dilution Statute, common-law trademark infringement, and common-law unfair competition—and six claims under federal law: trademark counterfeiting, 15 U.S.C. § 1114; trademark infringement, 15 U.S.C. § 1114; unfair competition, 15 U.S.C. § 1125(a)(1); trademark dilution, 15 U.S.C. § 1125(c); RICO, 18 U.S.C. § 1962(c); and conspiracy to violate RICO, 18 U.S.C. § 1962(d). Each claim is barred on immunity grounds.

1. Plaintiff's State-Law Claims are Barred by Government Immunity.

All three of Springboards' state-law claims—its trademark dilution claim under the Texas Anti-Dilution Act and its common law claims for trademark infringement and unfair competition—are tort claims barred by the Texas Tort Claims Act ("TTCA"). *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.022 (waiving immunity only for (1) claims arising from the operation of a motor-driven vehicle; (2) claims caused by use of tangible personal or real property; and (3) claims arising from premise defects). All three of Plaintiff's state-law claims constitute tort claims under Texas law. *See Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 812-13 (Tex. App.—Austin 2001, pet. denied) (recognizing claims for common law trademark infringement and statutory dilution under the Texas Anti-Dilution Statute as torts); *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (describing unfair competition as a "tort" under Texas law). Region One thus has governmental immunity from suit with respect to all of the state-law claims. *See Educ. Serv. Ctr., Region II v. Marikudi*, 13-09-00371-CV, 2010 WL 1254603, at *2 (Tex. App.—Corpus Christi Apr. 1, 2010, no pet.) (holding that education service centers are entitled to immunity under the TTCA). The state-law claims against Region One should be dismissed for lack of subject matter jurisdiction.

12

Furthermore, the TTCA bars Plaintiff's state-law claims against the individual public officials named by Springboards in its Complaint. The TTCA includes a strict "Election of Remedies" provision that requires "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 101.106. Section 101.106(a) provides that the "filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employees of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106 (a). In addition, Section 101.106(e) provides that if "a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106 (e).

Here, Springboards has filed the instant suit asserting the tort claims of trademark dilution, trademark infringement, and unfair competition against Region One, Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra. In addition, Springboards has already filed the two SDTex Cases, alleging identical claims regarding the same subject matter against Region One, McAllen ISD, Ms. Huston, Ms. Vega, and Dr. Sheneman.[16] Springboards' assertion of these tort claims against both the governmental entities—Region One and McAllen ISD—and their employees (Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra) triggers the election of remedies set forth in Section 101.106. *See Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex. 2015); *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.106(a), 101.106(e). Accordingly, the tort claims of trademark

---

[16] *See* App. 88-93, ¶¶63-84 (Region One, et al.), App. 132-136, ¶¶ 56-77 (McAllen ISD) (Ex. 2 – Springboards' complaints in SDTex Cases).

dilution, trademark infringement, and unfair competition against the Region One/McAllen Defendants must "immediately be dismissed." TEX. CIV. PRAC. & REM. CODE § 101.106(e).

Additionally, Plaintiff's state-law claims must be dismissed on two additional immunity grounds. First, Plaintiff's state-law dilution claim is barred because the applicable statute, the Texas Anti-Dilution Statute, contains no language—and certainly not the requisite *clear and unambiguous language*—abrogating governmental immunity for dilution claims brought against a state governmental entity. *See* TEX. BUS. & COM. CODE §16.103; *see also Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) (holding that governmental immunity bars suit unless the State *expressly* waives immunity or consents to the suit). Second, Plaintiff's state-law claims against Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra are also barred because they are certified, professional employees of either McAllen ISD or Region One,[17] and therefore have official immunity pursuant to the Texas Education Code. *See* TEX. EDU. CODE §§ 22.0511(a), 8.006.[18]

Finally, the Region One/McAllen Defendants request that this Court take judicial notice of the fact that they have raised these same arguments before Judge Ricardo H. Hinojosa in the

---

[17] Defendants request that the Court take judicial notice of the Texas Educator Certificates of Brenda Huston, Jenny Ann Vega, Dr. Laura Sheneman, and Dr. Silvia Ibarra, as reported in the State Board for Education's "Official Record of Certification," a searchable public database available on the State of Texas website, attached hereto in the Appendix, App. 241-244 as Exhibit 5. The certificates show that, throughout the relevant time period, Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra have been, and continue to be, certified professional educators.

[18] Section 22.0511 and Section 8.006 of the Texas Education Code provide broad immunity to professional employees of school districts and regional education service centers:

- Immunity from Liability (§ 22.0511): A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

- Immunity from Liability (§ 8.006): An employee or volunteer of a regional educational service center is immune from liability to the same extent as an employee or volunteer of a school district.

Southern District of Texas.[19]  Judge Hinojosa dismissed the precise state-law claims that Springboards re-asserts in this action, on government immunity grounds.[20]  For each of the foregoing reasons, all of Plaintiff's state-law claims must be dismissed against the Region One/McAllen Defendants on governmental immunity grounds.

3.     <u>All of Plaintiff's Claims Against Region One and Dr. Sheneman are Barred on Eleventh Amendment Sovereign Immunity Grounds.</u>

The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. *See* U.S. CONST. amend. XI; *see also McCardell v. U.S. Dept. of Hous. & Urban Dev.*, 794 F.3d 510, 521–22 (5th Cir. 2015) ("It is axiomatic that, as sovereigns, states and 'arms of the state' possess immunity[.]"). The Eleventh Amendment protects states from suit against *both federal and state-law claims*. *See Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997) ("[Plaintiff]'s state-law claims are also subject to the Eleventh Amendment bar. . . . [F]ederal and state-law claims rise and fall together."). Furthermore, the Fifth Circuit has squarely held that the Texas regional Education Service Centers are "arms of the state" and are therefore entitled to Eleventh Amendment sovereign immunity protections. *See Perez v. Region 20 Education Service Center*, 307 F.3d 318, 331 (5th Cir. 2002) ("Region 20, as one of Texas's Education Service Centers, is properly considered an arm of the State of Texas and thus enjoys Eleventh Amendment immunity from suit in federal court.").

Moreover, neither the Texas Legislature nor the United States Congress "has clearly and validly abrogated the state's sovereign immunity" with respect to the claims asserted by Plaintiff. As discussed above, the State Legislature has not waived immunity for state-law trademark

---

[19] *See* App. at 167-240 (Ex. 4 –Motions to Dismiss in SDTex Cases).

[20] *See* App. at 160-166 (Ex. 3 – Minute Entries dated Jan. 6, 2017 in SDTex Cases; App. at 245-264 (Ex. 6 –Jan. 6, 2017 Hearing Transcript in SDTex Cases).

claims. *See* Section B.1, *supra*. Furthermore, the United States Congress has not abrogated immunity for federal Lanham Act claims. *See, e.g.*, *State Contracting & Eng'g Corp. v. State of Florida*, 258 F.3d 1329, 1335–36 (Fed. Cir. 2001) ("[A state] enjoys sovereign immunity with respect to . . . Lanham Act claims unless [the state] has waived sovereign immunity."); *Utah Republican Party v. Herbert*, 141 F. Supp. 3d 1195, 1200 (D. Utah 2015) ("Congress has not abrogated sovereign immunity under the Lanham Act."); *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999) (holding that the Trademark Remedy Clarification Act, 15 U.S.C. §§ 1122, 1125, is not an effective abrogation of immunity for Lanham Act claims); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 631 n.1 (1999) (discussing requirements for effective abrogation of sovereign immunity under Fourteenth Amendment). Additionally, the United States Congress has not abrogated immunity for civil RICO claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. *See Gaines v. Texas Tech Univ.*, 965 F. Supp. 886, 889 (N.D. Tex. 1997) (determining that Eleventh Amendment immunity barred civil RICO claims against Texas Tech University and its employees in their official capacity).

Accordingly, all of Plaintiff's claims against Region One and its employee, Dr. Sheneman, are barred by Eleventh Amendment sovereign immunity.

       4.    <u>Plaintiff's Federal-Law Claims Against Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra are Barred on Qualified Immunity Grounds.</u>

Qualified immunity shields government officials performing discretionary functions from liability "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). Courts have held that

individual defendants possess qualified immunity against claims alleged under the Lanham Act[21] and the RICO statute[22]. In such cases, it is often implausible to conclude that the defendants' alleged acts are "objectively unreasonable in light of clearly established law," *Stokes*, 498 F.3d at 44, because the rights that serve as the basis of such claims are frequently not "clearly established" at the time of the defendants' alleged acts. *See, e.g.*, *Brown v. Nationsbank Corp.*, 188 F.3d at 588 (5th Cir. 1999).

Here, Springboards has not met its burden of alleging specific facts suggesting that Ms. Huston, Ms. Vega, Dr. Sheneman, or Dr. Ibarra would have known that their actions would have violated any "clearly established" rights purportedly held by Springboards. *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). (Indeed, as discussed in Sections C and D below, Springboards has not met its burden of alleging facts showing *any* violation of federal law by these individual defendants.) In any event, the complexities of applying trademark law or civil racketeering law in the public-school setting weigh in favor of a qualified immunity defense. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (ordering dismissal on qualified immunity grounds of claims against educator in light of "complexities of applying [relevant authorities] in public elementary schools"). Accordingly, the Court should dismiss all federal-law claims against Ms. Huston, Ms. Vega, Dr. Sheneman, and Dr. Ibarra.

---

[21] *See, e.g.*, *Chavez v. Arte Publico Press*, 59 F.3d 539, 548 (5th Cir. 1995), *overturned on other grounds by Univ. of Houston, Texas v. Chavez*, 517 U.S. 1184 (1996); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*, 2:10-CV-09378-CBM, 2012 WL 7683452, at *6 (C.D. Cal. Nov. 20, 2012) (finding that online streaming of "The Plays of William Shakespeare" by university educators did not violate plaintiff's "clearly established rights pursuant to copyright law because it is ambiguous whether the use was fair use under copyright law"); *Campinha-Bacote v. Bleidt*, CIV.A. H-10-3481, 2011 WL 4625394 (S.D. Tex. Oct. 3, 2011) (barring claims against professor on qualified immunity grounds because it was objectively reasonable for her to believe that her use of an orientation survey was not violating copyright laws).

[22] *See Brown*, 188 F.3d 579, 588 (individual defendants entitled to qualified immunity against RICO claim because rights serving as basis of claim were not "clearly established" at time of alleged acts); *see also Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 622 (N.D. Tex. 2007) (citing same).

5. Region One, Ms. Vega, Ms. Huston, and Dr. Sheneman Intend to file Motions For Summary Judgment On Their Sovereign Immunity and Qualified Immunity Defenses in the SDTex Cases Against Region One By March 7, 2017.

Finally, the Eleventh Amendment sovereign immunity and qualified immunity defenses asserted in this motion were also asserted against the identical Lanham Act claims asserted by Springboards in the SDTex Cases in the Southern District of Texas.[23] Judge Hinojosa denied without prejudice the motions to dismiss on these two defenses, but invited the defendants to file motions for summary judgment on these defenses by March 7, 2017.[24] Region One, Ms. Vega, Ms. Huston, and Dr. Sheneman, the defendants in the SDTex case against Region One, intend to file such motions for summary judgment.

C. **The RICO Claims Fail To State A Claim Upon Which Relief May Be Granted Under Rules 9(b) and 12(b)(6).**

Plaintiff asserts RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d). Complaint, ¶¶ 147-160. Each RICO claim necessitates: 1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*. *In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993). For at least the reasons stated below, the Complaint fails to state RICO claims under §§ 1962(c) and 1962(d). Subject to and without waiving all immunity defenses and their motions to dismiss or transfer this action for improper venue, the Region One/McAllen Defendants move that the RICO claims be dismissed under Fed. R. Civ. P. 12(b)(6).[25]

---

[23] *See* App. at 167-240 (Ex. 4 - Motions to Dismiss in SDTex Cases).

[24] *See* App. at 160-166 (Ex. 3 –Minute Entries dated Jan. 6, 2017 in SDTex Cases); App. at 245-264 (Ex. 6 --  Jan. 6, 2017 Hearing Transcript in SDTex Cases.

[25] To be clear, the Region One/McAllen Defendants contend that these questions should be decided by Judge Hinojosa in the case currently pending in McAllen. They are included here out of an abundance of caution.

18

1.    <u>The Complaint Fails To Allege A Sufficient Factual Basis for the RICO Claims
Predicated on Mail Fraud or Wire Fraud.</u>

Plaintiff explicitly alleges mail fraud and wire fraud as predicate acts of racketeering
activity in support of the RICO claims under §§ 1962(c) and 1962(d). *See* Complaint, at pp. 45,
47 of 53, ¶¶ 146-147, 156. The mail fraud and wire fraud statutes prohibit, in pertinent part, "any
scheme or artifice to defraud" or to obtain money or property "by means of false or fraudulent
pretenses, representations, or promises." *See* 18 U.S.C. §§ 1341, 1343; *Neder v. U.S.*, 527 U.S. 1,
20 (1999). The pleading requirements of Fed. R. Civ. P. 9(b) apply to RICO claims resting on
allegations of fraud. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).
Pleading fraud with particularity requires "time, place and contents of the false representations,
as well as the identity of the person making the representation, and what [that person] obtained
thereby"; the plaintiff must "specify the statements contended to be fraudulent [and] explain why
the statements were fraudulent." *Id*. (Internal citations omitted). The Fifth Circuit has held "that
when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the
Rule 9(b) standard is relaxed, and fraud may be pled on information and belief, *provided the
plaintiff sets forth the factual statement for his belief.*" *U.S. ex rel. Russell v. Epic Healthcare
Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) (emphasis supplied).

Although liberally sprinkled with references to "fraud" and "fraudulent scheme,"[26] the
Complaint fails to allege a single fact that would allow the Court to infer that any person, much
less any of the individual defendants, made a false or fraudulent representation. The Complaint
does not specify any statements contended to be false, explain why they are false, or identify the
maker of the statement or where and when the statement was made. Nor does the Complaint
provide any facts that would allow the Court to infer fraudulent intent by any defendant.

---

[26] *See* Complaint, ¶¶ 31(b), 38-39, 42-44, 46-50, 82, 149-50, 154, 156-57, 160, and 174.

Some of the allegations of fraud are made on information and belief (Complaint, ¶¶ 31, 46-50), and the Complaint alleges that some facts relating to the fraud allegations are within the control of the Defendants (Complaint, ¶¶ 31, 40-41, 46-50, 148-149).  Regardless, the Complaint does not allege any facts to support the allegations that the relevant facts are peculiarly with the knowledge of the defendants, so as to justify relaxing the pleading requirements of Rule 9(b); and in any event the Complaint does not allege any factual basis for the alleged belief. The Complaint fails to allege mail fraud or wire fraud with the particularity required by Rule 9(b), and thus fails to state a RICO claim predicated on mail fraud or wire fraud.

2.  <u>The Complaint Alleges Neither The Elements Of, Nor a Sufficient Factual Basis For, the Predicate Act of Trafficking In Goods or Services Bearing Counterfeit Marks under 18 U.S.C. § 2320.</u>

Plaintiff also alleges that each defendant "engaged in trafficking of goods and services bearing counterfeit marks in violation of the law including, but not limited to, 18 U.S.C. § 2320." Complaint, ¶¶ 52, 59-60. This offense is included within the definition of "racketeering activity." 18 U.S.C. § 1961(1). Because these allegations are incorporated by reference in the RICO claim under § 1962(c), (Complaint, ¶ 147), Defendants construe the Complaint as alleging a violation of 18 U.S.C. § 2320 as a predicate act of racketeering activity for the claim under § 1962(c). For at least the reasons stated below, the Complaint fails to allege a sufficient factual basis for the allegation of trafficking in counterfeit marks.

The elements of a claim for trafficking in counterfeit marks are: (1) the defendant trafficked or attempted to traffic in goods or services; (2) such trafficking, or the attempt to traffic, was intentional; (3) the defendant used a counterfeit mark on or in connection with such goods or services; and (4) the defendant knew that the mark so used was counterfeit. *U.S. v. Hanafy*, 302 F.3d 485, 487 (5th Cir. 2002). "Trafficking" means "to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain,

20

or to make, import, export, obtain control of, or possess, with intent to so transport, transfer, or otherwise dispose of." 18 U.S.C. § 2320(f)(5). A "counterfeit mark" is defined in § 2320(f)(1) and includes *inter alia* the following: (a) the mark is "identical with, or substantially indistinguishable from" a mark is registered on the principal register (the "genuine mark"); and (b) the mark is applied to or used in connection with the goods or services for which the genuine mark is registered. 18 U.S.C. § 2320(f)(1)(A)(ii).[27]

The Complaint includes numerous conclusory references to "counterfeits," "counterfeit products," "counterfeit items," or "knock-offs."[28] These conclusory allegations do not identify any mark alleged to satisfy the statutory definition of a "counterfeit mark" under § 2320(f)(1); do not identify the goods and services with which such mark is used; do not identify any acts identified as "trafficking" in such goods and services, and do not allege that any defendant knew that the mark so used was counterfeit. No facts are alleged that would support such allegations.

The only *factual* allegations are contained in the "representative examples of Defendants' activities" in Exhibit B (Complaint, ¶66; Exh. B, App. 026, 061-68), and nothing in Exhibit B supports an inference that any defendant is liable for trafficking in counterfeit marks. Exhibit B indicates that a school librarian hosted a "poster session" presentation at a Region One library seminar describing that school's "Million Word Challenge" reading program. Exhibit B also includes screenshots of an apparent "goal setting" worksheet titled "Region One ISD – READS 2015-2016," which includes a reference to "Millionaire trophies" and a "Millionaire trip" for students who meet the "Millionaire Reader criteria." *See* Complaint, Exh. B, App. 064-68. But Exhibit B contains no reference to any mark that is "identical with, or substantially

---

[27] The complete text of 18 U.S.C. § 2320 is included at App. 299 (Ex. 8 – 18 U.S.C.  § 2320).

[28] Complaint, ¶¶ 3, 31-32, 38-41, 43, 46-50, 52, 59-60, 65, 66, 68, 71-76, 82, 84-85, 94, 96, 113, 119, 138, 148, 157, 160.

indistinguishable from" Plaintiff's registered marks ("Read a Million Words," Million Dollar Reader," "Millionaire Reader," Millionaire's Reading Club"), does not identify goods and services with which such mark is used, and provides no evidence that any defendant transferred such goods or services for commercial advantage or private financial gain. "Millionaire trophies" cannot support a trafficking claim because Plaintiff's marks are registered for "paper goods," not trophies. Complaint, Exh. A, App. 055-59.

### 3.   The Complaint Fails To Allege a "Pattern" of Racketeering Activity.

A pattern of racketeering activity is at least two predicate acts of racketeering activity that show continuity plus relationship with the legitimate business. *Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989); 18 U.S.C. § 1961(5). For at least the reasons discussed above, the Complaint does not allege facts to show two such predicate acts.

### 4.   The Complaint Fails To Allege Facts To Show an "Enterprise."

"The enterprise is an entity, … a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v Turkette*, 452 U.S. 576, 583 (1981). "The "enterprise" element of the RICO claims is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* "The "enterprise" is not the pattern of "racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages." *Id.* An "association-in-fact enterprise"—as alleged here, Complaint, ¶ 16—must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *U.S. v. Boyle*, 556 U.S. 938, 945-46 (2009).

The Complaint expressly describes the enterprise as "consisting of all of Defendants/

Defendants' coordinated efforts." Complaint, ¶ 62. This allegation shows that the alleged enterprise is *not* "an entity separate and apart from the pattern of activity in which it engages" and therefore is not a RICO "enterprise." Moreover, the Complaint fails to provide factual allegations to show the common purpose, internal relationships, and longevity requirements of an "enterprise." Conclusory allegations of parallel sales of "knock-offs," and abstract references to the "head" or "top of the hierarchy" and a "network of contracts, transactions and payoffs," *see* Complaint, ¶¶ 40-41, 43, 46-50, 61-64, do not plausibly show the "common purpose" required to allege a "enterprise." *See Rao v. BP Products North America, Inc.*, 589 F.3d 389, 400 (7th Cir. 2009); *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 374-75 (3rd Cir. 2010).

5.   The Complaint Fails To State a Claim For Conspiracy Under § 1962(d).

The elements of a RICO conspiracy under § 1962(d) are (1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). A "RICO civil conspiracy complaint, at the very least, must allege specifically [an agreement to commit predicate acts]." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995). The conspiracy claim is based solely on the theory that "Defendants were in agreement to engage in mail fraud or wire fraud." (Complaint, ¶ 156). However, there are no particularized facts to support this allegation, as required by Fed. R. Civ. P. 9(b), and the absence of factual support for the predicate acts of mail fraud and wire fraud is fatal to the allegation of the conspiracy claim.

6.   Region One, a Governmental Entity, Cannot Be Held Liable Under RICO.

The Complaint fails to state a RICO claim against Region One because it is a governmental entity and therefore cannot be held liable under RICO. *See Lancaster Comm'y Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 404 (9th Cir. 1991) (dismissing

23

RICO claims against hospital district because mail fraud requires intent to deceive and "governmental entities are incapable of forming a malicious intent"); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3rd Cir. 1991) (holding that "a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation"); *Dammon v. Folse*, 846 F.Supp. 36, 37-39 (E.D.La. 1994) (adopting *Lancaster Comm'y Hospital* and *Genty* to dismiss RICO claims against school board).

D.      **The Complaint Fails To State Claims Under the Lanham Act.**

For at least the reasons stated below, the Lanham Act claims in the Complaint under 15 U.SC. §§ 1114, 1125(a), and 1125(c) also fail to state a claim on which may be granted. Subject to and without waiving all immunity defenses and their motions to dismiss or transfer this action for improper venue, the Region One/McAllen Defendants move that the Lanham Act claims be dismissed under Fed. R. Civ. P. 12(b)(6).[29]

The bulk of the allegations relevant to the Lanham Act claims are legal conclusions or threadbare recitals of the elements of the cause of action supported by mere conclusory statements. The allegations in paragraph 66 of the Complaint and Exhibit B to the Complaint contain the *only* potential "factual matter" that might state a Lanham Act claim against Defendants:

> 66. The breadth of Defendants' counterfeiting is extensive, as Defendants have sold at least thousands of pieces of Counterfeit Products. Representative examples of Defendants' activities include, but are not limited to, the examples in Exhibit B.

For at least the reasons discussed below, these allegations do not contain sufficient factual matter, accepted as true, to state a claim for relief under Lanham Act that is plausible on its face.

---

[29] To be clear, the Region One/McAllen Defendants contend that these questions should be resolved in the Region One SDTex case. They are included here out of an abundance of caution.

First, nothing in the "representative examples" in Exhibit B shows or suggests *any* form of sale, offering for sale, or advertising of goods, much less sale of "thousands of pieces of Counterfeit Products" by any defendant, as alleged in ¶ 66.

Further, each Lanham Act claim also includes a "commercial use" requirement. *See Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547 n. 13 (5th Cir. 2001); *Radiance Foundation v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015); 15 U.S.C. §§ 1114(a) (infringement and counterfeiting), 1125(a)(1) (unfair competition), 1125(c)(3(C)(dilution). The Complaint does not allege such "commercial use" because nothing in Exhibit B shows an advertisement or significant economic motivation for the speech in Exhibit B, and the speech does not propose a commercial transaction. *See Proctor & Gamble*, 242 F.3d at 552, *citing Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67 (1983).

Finally, "use in commerce" is an essential element of each Lanham Act claim. *See* 15 U.S.C. §§ 1114 (a), 1125 (a)(1)(A), 1125(c)(1). Exhibit B shows noncommercial public school educational activity that is beyond Congress' reach under the Commerce Clause, *see United States v. Lopez*, 514 U.S. 549, 565-66 (1995), and therefore not "use in commerce" under the Lanham Act. *See* 15 U.S.C. §1127.

## <u>CONCLUSION</u>

For the reasons described above, the Region One/McAllen Defendants request that this Court grant the accompanying Motion to Dismiss and dismiss Plaintiff's Complaint, or in the alternative, transfer this action to the Southern District of Texas, McAllen Division, and for all such other relief to which they may be entitled.

Dated: January 31, 2017

Respectfully submitted,

**RICHARDS RODRIGUEZ & SKEITH**

816 Congress Avenue, Suite 1200
Austin, Texas 78701
Telephone: 512-476-0005
Facsimile:  512-476-1513


*/s/ J. Roger Williams, Jr.*
J. ROGER WILLIAMS, JR.
Attorney-in-charge
State Bar No. 2155560
Email: RWilliams@rrsfirm.com
DANIEL RIEGEL
State Bar No. 24088298
Email: DRiegel@rrsfirm.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017 a true and correct copy of the foregoing document was served on counsel of record via the Court's electronic notification system:

Ruben C. DeLeon
State Bar No. 00790577
DELEON LAW GROUP, P.C.
5851 Dallas Parkway, Suite 600
Addison, Texas 75001
rdeleon@deleonlawgroup.com
**Counsel for Plaintiff**

KEVIN O'HANLON
State Bar No. 15235500
Southern District No. 10280
O'Hanlon, McCollom & Demerath, P.C.
808 West Avenue
Austin,  Texas 78701
Email: kohanlon@808west.com
KRISTI GODDEN
State Bar No. 24079577
Southern District No. 3008429
Email: kgodden@808west.com
**Counsel for Defendant Nora Galvan**

PAUL R. GENENDER
Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, TX 75201
Email: paul.genender@weil.com
OLIVIA ZIMMERMAN MILLER
Email: olivia.miller@weil.com
**Counsel for Defendant Houghton Mifflin Harcourt Publishing Co.**

SHANNON ZMUD TEICHER
Lead Attorney
State Bar No. 24047169
Jackson Walker LLP
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Email: steicher@jw.com
STACY ALLEN
State Bar No. 24034185
Email: stacyallen@jw.com
**Counsel for Defendants Scholastic Corporation and Scholastic Book Fairs, Inc.**

*/s/ J. Roger Williams, Jr.*
J. Roger Williams, Jr.

27